33394. GARNER *v.* THE STATE.
33395. WILLIS *v.* THE STATE.

Decided January 25, 1951.

*Frank S. Twitty,* for plaintiffs in error.
*Maston O'Neal, Solicitor-General,* contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ Ground 1 of the amended motions for new trial complains of the following excerpt from the charge of the court: "The defendant is allowed to make the court and jury just such statement in his own behalf as he sees fit. His statement is not under oath, it

is not subject to cross-examination, and you are authorized to give it such weight and credit only as you think it is entitled to receive. The statement is not under oath, and the defendant incurs no penalty of the law if the statement is untrue. You may believe the statement in whole or in part and you may believe it in preference to the testimony in the case, provided you believe it to be the truth. You may believe parts of the testimony and parts of the defendant's statement, you being the sole and exclusive judges as to what witness or witnesses and what testimony you will believe, and what credit, if any, you will give to the defendant's statement." It is charged that the effect of this charge and the repetition of the words, "The statement is not under oath," and the words, "provided you believe it to be the truth," had the effect of minimizing and discrediting the defendants' statements, and was an expression of opinion that the same were not worthy of belief. It was held in *Eaton v. State*, 83 *Ga. App.* 82 (62 S. E. 677), that this exact charge was not subject to the exceptions urged, although it would have been better to give the charge in the wording of the statute. This assignment of error is therefore without merit.

■ The second assignment of error is on the ground that the charge of the court on conspiracy, to the effect that, where two or more persons form an intent and purpose to commit a crime, in pursuance of which the crime is actually committed, the acts of each person done in the commission of the crime would be attributable to all present aiding and abetting therein, is error, since, although the charge is correct as an abstract principle of law, it is not authorized by the evidence or the defendant's statement. Where there is no sufficient evidence of a conspiracy, of course a charge on this subject is error. *Johnson v. State*, 186 *Ga.* 324 (197 S. E. 786); *Simmons v. State*, 79 *Ga.* 697 (1) (4 S. E. 894). An example of circumstances insufficient to justify such a charge may be found in *Griffin v. State*, 37 *Ga. App.* 188 (139 S. E. 105), where, as in this case, two male companions took the prosecutrix riding and she later accused them of assault with intent to rape. In that case, the defendant Griffin remained in the automobile with a woman companion while the codefendant took the prosecutrix from the automobile and attempted to assault her some distance away, and the court held that, in the

absence of any evidence whatever that Griffin and his codefendant had planned this act, or that Griffin had any knowledge of it either before or at the time it occurred, he could not have been said to have aided and abetted its commission, even though he was the driver of the automobile. In this case, the prosecutrix testified that one of the defendants held her while the other attempted to rape her; she was unable to distinguish between them, and it was her impression that each had assisted the other. It is undisputed that the defendants remained together throughout the evening. Under the State's view of the case, they engaged jointly and over a period of several hours in assaults. This view was supported by the evidence and authorized the charge on conspiracy. The charge on this subject is therefore without error. See Code (Ann.) § 26-501, catchword, "Conspiracy," and cases cited thereunder.

■ The remaining special grounds complain of the admission of evidence on behalf of the State, which was circumstantial in character and intended to be corroborative of the statement of the prosecutrix that she was forcibly carried about in the automobile, and that she did everything within her power to obtain help, by crying and screaming. O. T. Stewart testified that he lived four miles below Ochlochnee; that about 8:30 p.m. he heard a woman screaming in great distress and over a long period of time; that the sounds came from a ball ground below his house; that he went to his brother's house with the idea of getting help; that after some delay they succeeded in locating the sheriff; that when the sheriff arrived the person or persons had left; that in the meantime a car passed him going at a rapid rate. Other testimony in this connection was to the effect that, when the search was made, recent car tracks showed that an automobile had been driven out of the lot and had turned into the highway; also, a black scarf was found in the field, which scarf the prosecutrix had reported lost that night, and which was later identified by her. Junior Alligood and Carl Cox testified that they were standing by the police station in Meigs at about 9:30 p.m., and that a car drew up and stopped at a traffic light, and that a woman inside the car was screaming. Hardy Nelms testified: that at about 9:30 on that night, in Meigs, a car passed his house at a high rate of speed, went down the road

and turned into a cemetery, turned around and came out and went down the county-line road running west from Meigs; that there was a woman in this car screaming; that the car went in the direction one would take to reach the Bentley store (near which was the house where the prosecutrix had asked for shelter). This testimony was corroborated by Mrs. Robert Bryant, who was on her way to Nelms' house at the time.

The above testimony is set out and assigned as error in both cases. In case No. 33395 error is also assigned on the testimony of Inez Lewis, to the effect that she lived on a farm south of Pelham near the home of Marion Johns (to which the prosecutrix went); that she heard noises, which sounded like a woman crying, over a long period of time near her house, but did not investigate them. Error is assigned on all this testimony on the ground that it was prejudicial, in that it tended to create in the minds of the jury that the defendants and the prosecutrix might have been in the car referred to, and that the prosecutrix might have been the person heard screaming and crying, when as a matter of fact no evidence was introduced to show that the defendants were in the car or that the prosecutrix was the person screaming and crying.

Questions of the relevancy of evidence are for the court. *Hotchkiss* v. *Newton,* 10 *Ga.* 560. No precise and universal test of the relevancy of testimony is furnished by the law, but each must be determined in accordance with the facts of that particular case. *Alexander* v. *State,* 7 *Ga. App.* 88 (66 S. E. 274). It has been said that, when facts are such that the jury, if permitted to hear them, may or may not make an inference pertinent to the issue, according to the view which they may take of them, in connection with the other facts in evidence, they are such that the jury ought to be permitted to hear them. *Walker* v. *Roberts,* 20 *Ga.* 15 (1). See also *Brown* v. *Wilson,* 55 *Ga. App.* 262 (1) (189 S. E. 860). This proposition is exceedingly broad, but the presumption or inference to be drawn from the facts must be one which may fairly and logically be drawn therefrom. *Kutzchan* v. *State,* 68 *Ga. App.* 121 (22 S. E. 2d, 410); *Keener* v. *State,* 18 *Ga.* 194 (63 Am. D. 269); *Stone* v. *State,* 118 *Ga.* 705 (7) (45 S. E. 630). That the testimony objected to falls short of proving the fact sought to be established

is not in itself sufficient reason for excluding it, provided that it, alone or in connection with other testimony, tends to prove the matter in issue. *Livingston* v. *Barnett,* 193 *Ga.* 640 (3-a) (19 S. E. 2d, 385). As further stated in *McNabb* v. *State,* 70 *Ga. App.* 798, 799 (29 S. E. 2d, 643): "Any evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant."

With these tests in mind, it is necessary to analyze the evidence in this case. The State sought to show that the defendants assaulted the prosecutrix with intent to rape her. To prove the element of intent, they offered the testimony of the prosecutrix that she attempted to leave the car, and that she consistently screamed, fought, and cried for help. The prosecutrix was unable to say where she had been taken, but insisted that the car had left Thomasville by Dodson's Grill, had gone out a paved road, and then had turned off onto a dirt road in the country. The Johns home where she was found was on a dirt road south of Pelham and within walking distance thereof. The testimony of Inez Lewis that she heard a woman crying near her house—in connection with the testimony of J. W. Johns, that he also heard the crying between the house of Inez Lewis and that of Marion Johns, and that he saw a car parked on the road near there—and the undisputed testimony that it was night in a lonely locality, that the prosecutrix was actually in the vicinity and shortly thereafter came to the home of Johns asking for help, are sufficient when taken together to tend to establish a material fact at issue, and in consequence to make the testimony relevant. This is also true as to the testimony of Stewart, to the effect that a woman screamed near his home in the vicinity of the ball ground. Connected with this fact is the fact that the next morning a black bandana scarf was found on the ball field; that previous to the finding of this bandana the prosecutrix had stated that she lost such an article of clothing, and that she later identified it. These are circumstances tending to establish that the prosecutrix was or might have been on the ball ground. This being so, evidence of crying and screaming, although the woman and the car she was in were unidentified, was also a circumstance

relevant to the case—tending to establish that a woman was in distress at a place where the prosecutrix had been (or her clothing found), and at a time when she testified that she was actually crying and screaming for aid. It was admissible as a circumstance from which an inference might fairly and logically be drawn.

There remains the testimony of the witnesses that, about an hour later, a woman in a car in Meigs was screaming; that the car stopped at a traffic light in the center of town; that a car went to the cemetery and came out again traveling toward the county-line road. The question as to the admissibility of this evidence is admittedly complex. The only connection between it and other .facts testified to in the record are that there were car tracks at the ball ground near Ochlochnee, turning onto a road which went into Meigs; and that the car at the cemetery in Meigs turned onto a road by which one could reach the Bentley store. The prosecutrix herself did not remember having been in or through the town of Meigs on that night, although she stated that she was familiar with it, but Garner, in his statement to the jury, said that, after the argument between himself and his codefendant at the first place where they had stopped, "We left there and came straight on through Meigs and came to the red light, and come on out the county line and turned and came on out there" to the place where they had stopped near the Johns home. The time element also fits this theory, as one witness put the screaming woman in Ochlochnee at about 8:30, another witness the sounds in Meigs at about 9:30, and Bentley testified that it was about 11 when he was summoned to the Johns house to help the girl. There is evidence that the car on each occasion was traveling in a direction which it would ordinarily take in order to reach the place where a car containing a screaming woman was next seen. Each witness who saw this car pass by testified that it was traveling at a rapid rate of speed. This evidence is all of a collateral or supplementary nature, but, as stated in 31 C. J. S., Evidence, § 162, "While a fact does not become relevant merely because its existence is consistent with a party's contentions, a collateral fact is relevant and admissible when it tends to render probable the contention of the party producing it, and the court may receive aid from evidence which

is not relevant to any issue in the case, but which is corroborative of other evidence on a disputed point." The issue here being whether the defendants assaulted the prosecutrix with intent to rape her (on which point there is the direct testimony of the prosecutrix), proof that she was in a car with them and was screaming would be a circumstance from which the fact of assault might be inferred. Proof of screams, with no identification of the party screaming, would not of itself be a circumstance from which this conclusion might be reached. But when the prosecutrix testified that she was in fact "screaming and hollering," and when, from other circumstance, it appears as a logical inference that the cries heard correspond in time and location with those she testified she made (although she did not herself know either the time or the place), such testimony is admissible as corroborative of other evidence, so that the jury "may or may not make an inference pertinent to the issue, according to the view which they may take of them, in connection with the other facts in evidence." *Walker* v. *Roberts*, supra. Accordingly, special grounds 4, 5, 6, and 7 are without merit, as is also special ground 8 in case No. 33395.

■ Ground 8 in case No. 33394 complains of the admission of the following testimony: "Q. Did it sound like somebody hollering for any particular purpose? A. It sounded like somebody was in trouble." Obviously, the question called for the opinion of the witness, and the answer gave the witness's opinion. Code § 38-1708 provides as follows: "Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor; but if the issue shall be as to the existence of a fact, the opinions of witnesses, generally, shall be inadmissible." Reference to the entire testimony of this witness discloses that she testified that the prosecutrix was crying and begging for help; that, in response to the prosecutrix's entreaties, the witness took her into the home of her father where the witness was visiting, and that the witness then took her two brothers and went to Mr. Bentley's store, where she reported the incident. Sufficient facts are therefore stated by the witness upon which to base her conclusion that the screaming which she heard sounded like somebody in trouble. This assignment of error is therefore without merit.

Reference to the testimony set out in other divisions hereof discloses that the testimony of the prosecutrix, which was corroborated by the testimony of the other witnesses for the State, was sufficient to authorize the jury to return a verdict of guilty, and the general grounds of the motion for new trial are, therefore, without merit.

The trial court did not err in overruling the motion for a new trial as amended.

*Judgment affirmed.   MacIntyre, P.J., and Gardner, J., concur.*